

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0526-25

### THE STATE OF TEXAS

### v.

### MARTIN YOUNG, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS
## GUADALUPE COUNTY

PARKER, J., delivered the opinion of the Court in which
RICHARDSON, NEWELL, KEEL, and FINLEY, JJ., joined, and YEARY, J., joined
except for part II B.  MCCLURE, J., concurred.  SCHENCK, P.J., filed a
concurring and dissenting opinion in which WALKER, J., joined.

## OPINION

In this case, the court of appeals made the foundational mistake of conflating

independent grounds for *seeking relief* from a judgment with independent grounds

for *supporting* a judgment.  At the suppression hearing, the State made two

independent arguments for admitting evidence obtained pursuant to an officer-citizen encounter: (1) the encounter was consensual until the officer developed reasonable suspicion to detain, and (2) the officer was acting in accordance with a community-caretaking function until the officer developed reasonable suspicion to detain. After the trial court rejected both arguments, the State appealed, raising only the consensual-encounter argument. The court of appeals concluded that the State should have raised both arguments and that, because it did not raise the community-caretaking argument, the State failed to challenge every independent basis for upholding the trial court's decision. As a result of this reasoning, the court of appeals refused to address the State's consensual-encounter argument. But the court of appeals was mistaken: the State's two trial arguments were independent bases for *attacking* the trial court's suppression ruling, not independent bases for *supporting* it.

The State is now complaining about that mistake, and Appellee concedes that the court of appeals made this mistake. We reverse the court of appeals's decision and remand the case to that court to address the State's point of error.

## I. BACKGROUND

### A. The Incident

An anonymous 911 caller reported that a Blue Honda Odyssey minivan was stopped at an intersection with the driver appearing to be asleep. The driver appeared to place the vehicle in reverse and ultimately ended up in a parking lot. An officer arrived at the parking lot and found a vehicle matching the caller's description. He pulled in behind the vehicle but did not turn on his flashing lights. The officer approached, asked if Appellee if he was "all right" and if he had been asleep, and then asked Appellee if he could step out of the vehicle and talk. After Appellee exited the vehicle, the officer smelled alcohol and began asking questions designed to further a DWI investigation. At some point, the officer performed a field sobriety test on Appellee, which Appellee failed. Appellee was then arrested for driving while intoxicated (DWI).

## B. Suppression

Appellee moved to suppress all evidence obtained at the scene. At the suppression hearing, the State argued that the officer was performing a community caretaking function when he investigated Appellee. But the State also said that it was not relying entirely on the community caretaking function and argued that the encounter was actually a consensual encounter until the officer developed reasonable suspicion to detain Appellee. Appellee argued that the encounter was a

seizure from the beginning, without a community-caretaking function motivation, and that the seizure, at least initially, was without reasonable suspicion.

After hearing evidence and arguments, the trial court granted the motion to suppress. In its findings, the trial court concluded that the encounter was a seizure the moment the officer parked his patrol car behind Appellee's vehicle. The trial court explicitly rejected the State's contention that the encounter was a consensual one. The trial court further concluded that the seizure was initially justified by the community-caretaking function but that it soon became apparent that Appellee was not in distress, causing the community-caretaking basis for the seizure to dissipate. The trial court concluded that the continued questioning constituted a continuing detention without reasonable suspicion. Consequently, the trial court found that the evidence obtained in this encounter was obtained illegally.

### C. Appeal

On appeal, the State claimed that the encounter was initially a consensual one that became a detention only after the officer obtained reasonable suspicion to detain for DWI. The court of appeals acknowledged this in its opinion, summarizing the State's argument:

> On appeal, the State challenges the trial court's findings and
> conclusions arguing the initial contact up until the point where he

smelled the odor of alcohol was a consensual encounter that did not implicate the Fourth Amendment. It further contends, once Officer Cavazos smelled the odor of alcohol during the consensual encounter, he had reasonable suspicion to transform the encounter with Young into a lawful investigative detention for driving while intoxicated.[1]

As summarized, this argument, if correct, contains everything necessary for the State to prevail on appeal.

Nevertheless, the court of appeals observed that the State did not address the trial court's findings and conclusions regarding the cessation of the officer's community-caretaking function followed by an unlawful detention thereafter.[2] The court held, "Because the State does not argue the community caretaking exception theory of law on appeal, it has forfeited the issue."[3] But instead of turning to the State's "consensual encounter" argument, the appellate court held, "Because the State failed to challenge on appeal all independent grounds supporting the trial court's ruling, we must affirm the trial court's order."[4] In support of this conclusion, the court of appeals cited our decisions in *McGuire* and *Copeland* that

---

[1] *State v. Young*, No. 04-24-00430-CR, 2025 WL 1703778, *5 (Tex. App.—San Antonio June 18, 2025) (not designated for publication).

[2] *Id.* at *6.

[3] *Id.* *7.

[4] *Id.*

recite the *Calloway* rule for upholding a judgment based on any theory of law applicable to the case.[5]  The court of appeals affirmed, without addressing the merits of the State's "consensual encounter" claim.[6]

### D. Discretionary Review

In its ground for review, the State asks:

> When an appellant makes multiple arguments against a trial court's ruling and pursues only one on appeal, can the court of appeals properly ignore that argument, assume the trial court was right about an abandoned argument, and affirm?

In support of this ground, the State argued that the "community caretaking" and "consensual encounter" arguments were independent arguments for denying suppression and that the court of appeals failed to recognize this fact:

> Thus, a trial court's suppression of evidence is erroneous if even one exception or justification for warrantless police conduct under the Fourth Amendment applies.  Here, the court of appeals failed to recognize that the State's consensual-encounter argument *was an additional independent argument against suppression*.[7]

The State further complained that the court of appeals made "a logic error" by

---

[5]  *Id.* at *6 (citing *State v. McGuire*, 689 S.W.3d 596, 602 (Tex. Crim. App. 2024); *State v. Copeland*, 501 S.W.3d 610, 613 (Tex. Crim. App. 2016)); *see also McGuire*, *supra* at 602 & n.17 (citing *Calloway v. State*, 743 S.W.2d 645 (Tex. Crim. App. 1988)); *Copeland*, *supra* (citing *Calloway*).

[6]  *Young*, *supra* at *7.

[7]  Emphasis added.

inappropriately reasoning "in the converse," when it concluded "that the *absence* of any of these Fourth Amendment justifications or exceptions would also independently *establish* a Fourth Amendment violation."[8] Rather, the State contended, both of its trial arguments had to be defeated for the trial court's ruling to be correct:

> In reality, for the trial court's ruling to be correct, two things had to be true: (1) the interaction with Cavazos had to be more than a consensual encounter; and (2) it couldn't be justified by community caretaking.

Consequently, the State concluded, the court of appeals erred because justifications for warrantless police conduct were independent reasons to attack the trial court's suppression order rather than independent reasons to uphold it, so the State was only required to advance one of its reasons:

> For example, when the defense argues multiple violations of the Fourth Amendment in the trial court and the trial court suppresses the evidence, there are multiple reasons to uphold the trial court's ruling. The State (as the appellant) must refute them all or the trial court's ruling can be affirmed as right on any of these applicable theories. But when the defense argues against (or the State invokes) multiple exceptions or justifications for warrantless police conduct and the trial court suppresses the evidence, there are not multiple reasons to uphold the trial court's ruling. Each preserved exception must be defeated before the trial court's ruling is correct. And thus, the State (as the appellant) can drop one on appeal without penalty.

---

[8] Emphasis in State's petition.

When the State loses a suppression ruling, an abandoned Fourth Amendment justification or exception (unlike an abandoned violation) does not provide an independent basis to uphold the trial court's ruling.

In its briefing on discretionary review, the State reiterates that its claims on appeal "were not independent grounds for supporting the trial court's ruling but were independent grounds for refuting it" and that it needed only to raise one of them.

In his responsive briefing, Appellee agrees that "the State is correct that the Court of Appeals misapplied the procedural-default doctrine." Pointedly, Appellee concedes that the court of appeals made a "category error": "The [*Copeland*] rule applies when multiple theories might independently *support* a trial court's ruling. It does not apply when multiple theories might independently *refute* a ruling." Turning to the facts, Appellee explains what he sees as the flaw in the court of appeals's reasoning:

> Consensual encounter and community caretaking do not independently support suppression; instead, they might independently defeat it. The Court of Appeals treated them as if they were alternative grounds for the trial court's ruling, but they are alternative grounds for the State's challenge to that ruling. The State's failure to argue community caretaking does not leave an unchallenged basis for suppression; it leaves an unchallenged alternative basis for reversal. That is *choosing which argument to make*,

not *forfeiture*.[9]

Appellee nevertheless suggests that this Court can choose to address the merits of the suppression ruling instead of remanding that issue to the court of appeals. He characterizes this as a choice of *remedy*. The State responds that the court of appeals has not made a decision on the merits and that it is the proper court to do so in the first instance.

## II. ANALYSIS

### A. Preservation

Because the State did not raise the "community caretaking" argument on appeal, the court of appeals had no obligation to address it.[10] But that does *not* mean that the appellate court could decline to address the "consensual encounter" argument that the State did raise. The two arguments were independent reasons to deny the motion to suppress. Concisely stated, these two independent reasons were:

---

[9] Emphasis in Appellee's brief.

[10] *See Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex. Crim. App. 2012) ("[A]ppellate courts *may* review unassigned error—a claim that was preserved in the trial court but was not raised by either party on appeal.") (brackets and emphasis added); *Urias v. State*, 155 S.W.3d 141, 144 (Tex. Crim. App. 2005) (Keller, P.J., dissenting) ("While an appellate court may in its discretion address 'unassigned' error, it is rarely *required* to do so.") (emphasis in original); *cf. State v. Mercado*, 972 S.W.2d 75, 77 (Tex. Crim. App. 1998) (Like any appealing party, the State must preserve the legal theory upon which it wishes to obtain appellate relief.).

1. The officer had a community-caretaking reason to initiate the encounter with Appellee, and reasonable suspicion to detain for DWI arose before the community-caretaking reason dissipated.

2. The encounter was a consensual one until reasonable suspicion arose to detain for DWI.

As stated, each reason, by itself, contains everything needed for the State to prevail on appeal. Had the State raised both of these arguments on appeal, the court of appeals would have been required to address both to properly dispose of the appeal.[11] But the State was not obligated to raise both. It could decide to save itself and the court of appeals the trouble by raising what it perceived to be its stronger argument. And that is what it did. The court of appeals should have addressed the claim.

The *Calloway* rule that the court of appeals indirectly relied upon does not hold to the contrary. The point of that rule is that the trial court's "ruling" is

---

[11] *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that . . . addresses every issue raised and necessary to final disposition of the appeal."); *State v. Bernard*, 512 S.W.3d 351, 352 (Tex. Crim. App. 2017) ("In its first point of error, the State presented two arguments in support of the traffic stop: (1) there was reasonable suspicion that appellee violated Transportation Code Section 545.060(a); and (2) there was reasonable suspicion that appellee was driving while intoxicated. The court of appeals addressed only the first of these arguments and held that the traffic stop was not supported by reasonable suspicion and that appellee had violated Section 545.060(a) of the Transportation Code. . . . The State has now filed a petition for discretionary review claiming in part that the court of appeals erred in failing to address the State's alternative argument that the stop was justified by reasonable suspicion that appellee was driving while intoxicated. We agree. If the stop was supported by reasonable suspicion that appellee was driving while intoxicated, as the State contends, the disposition of the case may change.").

upheld if it is "*correct* on any theory of law applicable to the case and reasonably supported by the evidence."[12] But if one of the State's independent theories for denying relief is correct, then the trial court's suppression ruling is *not* correct. The *Calloway* rule typically applies when there are independent reasons to *uphold* the trial court's ruling and the appealing party fails to attack one of those reasons. But, in the present case, the "community caretaking" and "consensual encounter" reasons were independent reasons to *overturn* the trial court's ruling. *Calloway* does not bar a party from choosing to pursue only one of its independent attacks on a ruling.

That a party could have independent reasons for attacking a judgment is a proposition so obvious that it needs no citation. Every appellate attorney knows this. All one has to do is look at the vast number of appeals that raise more than one point of error. There are occasions when multiple claims have to be won in order to obtain relief, or when each claim supports a different type of relief. But there are an overwhelming number of instances when multiple claims are independent bases for the exact same relief requested. And while State's appeals are rarer, the State too can have independent claims attacking a trial court's

---

[12] *McGuire*, 689 S.W.3d at 602 (emphasis added).

suppression order.[13]

And multiple theories of relief can involve the same item of evidence. A defendant could object at trial that an out-of-court statement violates the rule against hearsay and also violates the Confrontation Clause of the Sixth Amendment.[14] No one would say to an appealing defendant who made those objections that he forfeits *both* of them by choosing to raise only the confrontation complaint on appeal. Or a defendant could claim that a custodial statement taken from him was inadmissible because he was illegally arrested and also because *Miranda*[15] warnings were not given.[16] Likewise, no one would say to an appealing defendant who made those objections that he cannot raise his *Miranda* claim unless he also raises the illegal-arrest claim. If the State responded to such an appealing defendant by arguing that there was no arrest, that could negate both an illegal-arrest claim and a *Miranda* claim, but so long as the appealing defendant's *Miranda* claim was complete, including an argument that he was in custody, he would not

---

[13] *See supra* at n.11 (citing *Bernard*).

[14] *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (Hearsay and confrontation objections are independent, such that an objection raising only the former does not preserve the latter for review.).

[15] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[16] *Cf. Dowthitt v. State*, 931 S.W.2d 244, 257-62 (Tex. Crim. App. 1996) (defendant advancing both *Miranda* and illegal-arrest claims).

have to also bring forward an illegal-arrest claim.

Of course, if the trial court *granted* a motion to suppress an out-of-court statement, hearsay and confrontation violations could be independent bases for upholding suppression. Likewise, if a trial court *granted* a motion to suppress a defendant's custodial statement, illegal-arrest and *Miranda*-violation rationales could be independent bases for upholding suppression. So, when the defendant has independent reasons to suppress evidence, those are independent bases for *relief* if he *loses* in the trial court and independent bases for *upholding the trial court* if he *wins*.

The same is true for the State. If the State has independent bases for denying suppression, those independent bases are independent bases to uphold the trial court if it rules in the State's favor but are independent bases for overturning the trial court if the trial court suppresses the evidence. In the hearsay context, for example, one could imagine the State advancing both the present-sense exception and the excited-utterance exception to support the admission of an out-of-court statement.[17] If the State obtained a conviction, those two exceptions would be independent bases to support the admission of the hearsay evidence, and the State

---

[17] *See* TEX. R. EVID. 803(1), (2).

would only have to prevail on one of them to uphold the trial court's ruling. If, on the other hand, the trial court suppressed the evidence as violating the hearsay rule, these two exceptions would be independent bases for attacking the suppression order.[18] And in an appeal from this hypothetical hearsay-suppression order, the State could raise claims based on both hearsay exceptions, but it would not have to, and could, for example, raise only the "excited utterance" exception.

*State v. Bernard* provides a real-world illustration of how the State could have multiple independent claims in a State's appeal. In that case, the State presented two bases for denying suppression: (1) reasonable suspicion that the appellee committed a transportation-code violation and (2) reasonable suspicion that the appellee committed DWI.[19] The trial court rejected both of the State's arguments.[20] The State raised both claims on appeal.[21] The court of appeals

---

[18] The State is permitted "to appeal any adverse pre-trial ruling which suppresses evidence, a confession, or an admission, regardless of whether the defendant alleges, or the trial court holds, that the evidence was 'illegally obtained.'" *State v. Medrano*, 67 S.W.3d 892, 894 (Tex. Crim. App. 2002).

[19] *Bernard*, 512 S.W.3d at 351.

[20] *Id.* ("Among its conclusions of law, the trial court concluded that: (1) Watson stopped appellee without reasonable suspicion of driving while intoxicated; and (2) appellee was not driving in an unsafe manner and there was no reasonable suspicion of a traffic offense under Texas Transportation Code section 545.060(a) at the time he was stopped.").

[21] *Id.* at 352; *see supra* at n.11.

addressed only the transportation-code argument and, rejecting it, affirmed the trial court's suppression order.[22] This Court held that the court of appeals failed to comply with Appellate Rule 47.1's requirement to issue an opinion "that addresses every issue raised and necessary to final disposition of the appeal."[23]

The key to *Bernard*'s holding is that the State's two arguments in that case were independent reasons for *denying* suppression, so they were independent bases for *reversing* the trial court. Therefore, the court of appeals could not choose to address only one of them. If either basis were correct, the trial court's suppression order would need to be reversed. That conclusion also means that the State did not have to advance both of its bases on appeal. It could have chosen to advance only the DWI basis, and the court of appeals would have been obligated to address it. That is precisely the scenario before us in the present case.

*State v. Copeland*, upon which the court of appeals relied,[24] does not hold to the contrary. In *Copeland*, the defendant made two arguments for suppressing the evidence: (1) the detention was too long, and (2) the consent was invalid.[25] The

---

[22] *Bernard, supra.*

[23] *Id.*; *see also* TEX. R. APP. P. 47.1.

[24] *See supra* at n.5.

[25] 501 S.W.3d at 612.

State challenged the "consent" claim but did not challenge the "length of detention" claim on appeal.[26] We agreed with the court of appeals that the State forfeited the "length of detention" claim and that this claim was enough to uphold the trial court's judgment.[27]

The key to *Copeland*'s holding is that the appellee's two arguments in that case were independent reasons for *granting* suppression, so they were independent bases for *affirming* the trial court.[28] The State was therefore required to defeat both bases in order to prevail.

In summary, had the trial court denied suppression in the present case, the State would have had two independent arguments for upholding that ruling. But because the trial court granted suppression, the independent bases for denying suppression became potential independent bases for relief on appeal. The State could have raised both claims, but it was not required to do so. Consequently, the court of appeals erred in concluding that the State forfeited or lost the right to a

---

[26] *Id.*

[27] *Id.* at 612, 614.

[28] *See id.* at 612 ("She filed a motion to suppress, arguing that the length of her detention was impermissibly long and that, alternatively, the police did not have consent to search the vehicle."); *see also id.* at 615 (Keller, P.J., dissenting) ("The length-of-detention issue was argued by appellee in the trial court as one of two alternative bases for granting the motion to suppress.").

review of its "consensual encounter" claim.

## B. Remand

Appellee claims that we should impose a different "remedy" than remanding to the court of appeals to address the State's claim of error—addressing the merits of the State's consensual-encounter claim ourselves. Citing judicial economy, the concurring and dissenting opinion also claims that we should address the merits. But as a general proposition, we review only "decisions" of the courts of appeals.[29] The court of appeals has issued no decision on the merits of the State's consensual-encounter claim. While there is an exception to our practice of remanding, when judicial economy is furthered by disposition of a remaining issue that is "clear,"[30] the present case does not satisfy the clarity required. And we should keep in mind that courts of appeals are tasked with deciding issues of error in the first instance. The court of appeals impermissibly evaded that responsibility with a procedural-default holding based on a foundational mistake that an appellate court should not make.

The concurring and dissenting opinion nevertheless claims that we should

---

[29] *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014); *see also Osorio-Lopez v. State*, 663 S.W.3d 750, 757 (Tex. Crim. App. 2022).

[30] *Gilley*, *supra*.

dispose of the error issue because the appeal here is an interlocutory one that is an "expedited" matter, the issue before us is subject to *de novo* review, or in any event, the issue is a factual one subject to almost total deference. The concurring and dissenting opinion reveals its own general disdain for discretionary review practice, however, by saying it disagrees with that practice as a general matter—adding only that it *especially* disagrees when the appeal is an interlocutory one.

But institutionally, this Court does not operate on discretionary review as a mere error-correction court. The Rules of Appellate Procedure recognize this in setting out guidelines for when this Court should grant review.[31] While the guidelines are "neither controlling nor fully measuring the Court of Criminal Appeals' discretion," they strongly point to the limited nature of our discretionary-review practice by suggesting that this Court should act only when circumstances require us as a superior court to step in, such as:

> (a) whether a court of appeals' decision conflicts with another court of appeals' decision on the same issue;

> (b) whether a court of appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals;

---

[31] *See* TEX. R. APP. P. 66.3.

(c) whether a court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States;

(d) whether a court of appeals has declared a statute, rule, regulation, or ordinance unconstitutional, or appears to have misconstrued a statute, rule, regulation, or ordinance;

(e) whether the justices of a court of appeals have disagreed on a material question of law necessary to the court's decision; and

(f) whether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.[32]

The court of appeals's procedural default holding clearly satisfies reason (f). If it doesn't satisfy reason (d), it is only because the mistake of law the court of appeals has made was so basic that this Court has not before had occasion to pass on it. But the merits issue does not satisfy any of those categories because there is not a "decision" of the court of appeals against which these reasons could be measured.

To be sure, this Court deviates from these categories on rare occasions. We have typically reserved the right to address "threshold" issues ourselves.[33] But

---

[32] *Id.*

[33] *See State v. Barber*, — S.W.3d —, No. PD-0510-25, 2026 WL 1073627, *2 n.9 (Tex. Crim. App. April 16, 2026) (citing *Ex parte Doster*, 303 S.W.3d 720, 721 & n.2 (Tex. Crim. App. 2010)); *Ex parte Nuncio*, 662 S.W.3d 903, 913 (Tex. Crim. App. 2022) (quoting from *Ford v. State*, 305 S.W.3d 530, 532-33 (Tex. Crim. App. 2009)).

otherwise, we have required clarity regarding the issue's resolution. And while we have addressed a previously unaddressed *error* issue on the ground that the resolution of the issue was clear, in each such case, at least one other extenuating factor was present. In *Gilley*, the error issue was overlooked by a court of appeals that addressed other error issues, and the appealing party expressly sought to have us decide the issue.[34] In *Davison*, the reasoning in the court of appeals's harm analysis established that there was not in fact any error.[35] Neither of those situations is present here. The State advanced only one claim of error on appeal, and the court of appeals evaded it with an erroneous procedural-default holding. The State has not asked us to resolve its point of error but seeks to have it resolved by the court of appeals. And nothing about the court of appeals's resolution of the preservation issue in this case impacts whether the trial court erred in granting the motion to suppress.

Relying in part on precedent from the United States Supreme Court, the concurring and dissenting opinion claims that this Court's usual practice is out of

---

[34] *See Gilley*, 418 S.W.3d at 117-19.

[35] *See Davison v. State*, 405 S.W.3d 682, 692 (Tex. Crim. App. 2013) ("In short, for essentially the same reasons that the court of appeals found that any constitutional violation was harmless (albeit under the wrong subsection of Rule 44.2), and therefore declined to reach the merits of his due process claim, we now conclude that the appellant has failed to establish the merits of his due process claim.").

step with traditional jurisprudence in Texas and in the country. The concurring and dissenting opinion is mistaken about that. The various authorities relied upon by the concurring and dissenting opinion speak primarily to first-level appeals, and only add that a second-level, discretionary-review court can, in its discretion, reach an issue not raised on second-level review or decided below.[36] In fact, many of the authorities the concurring and dissenting opinion cites address the "right ruling, wrong reason rule"— the *Calloway* rule—though called differently in other jurisdictions.[37] It is quite ironic that the concurring and dissenting opinion relies upon the *Calloway* rule to avoid sending this case back to a court of appeals that avoided deciding the merits by misapplying the *Calloway* rule.

But the outer limits of a discretionary-review court's power is not the same as its usual exercise. The United States Supreme Court has famously said that it is "a court of final review and not first view."[38] The Court has said that it has made statements like this "often."[39] And what the Supreme Court means by this is that,

---

[36] *See e.g.*, Jeffery Anderson, *Right for Any Reason*, 44 CARDOZO L. REV. 1015, *passim* (2023).

[37] *See id.*

[38] *Trump v. United States*, 603 U.S. 593, 617 (2024); *Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012); *Adarand Constructors v. Mineta*, 534 U.S. 103, 110-11 (2001).

[39] *See Rivers v. Guerrero*, 605 U.S. 443, 458 (2025) ("We are a Court of review, not of first view.") (quoting from *Cutter v. Wilkinson*, 544 U. S. 709, 718, n. 7 (2005)) (brackets omitted).

"Ordinarily, we do not decide in the first instance issues not decided below."[40] And generally, the Supreme Court declines to address issues not raised in a petition for certiorari: "We are typically reluctant to permit parties to smuggle additional questions into a case before us after the grant of certiorari."[41] And while that is a "prudential" doctrine, a "prudential rule . . . is more than a precatory admonition" and this one, at least, should be deviated from "only in the most exceptional cases."[42] And the Court has emphasized that, "by adhering scrupulously to the customary limitations on our discretion regardless of the significance of the underlying issue, we promote respect . . . for the Court's adjudicatory process."[43] And such adherence "also ensure[s] that we are not tempted to engage in ill-considered decisions of questions not presented in the petition."[44] The Supreme Court has applied this doctrine of discretionary-review

---

[40] *Zivotofsky*, 566 U.S. at 201.

[41] *Norfolk Southern Ry. v. Sorrell*, 549 U.S. 158, 164 (2007); s*ee also Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 31-34 (1993).

[42] *Izumi Seimitsu Kogyo Kabushiki Kaisha*, supra at 32.

[43] *Adarand Constructors*, 534 U.S. at 110.

[44] *Id.* at 110-11 (bracketed material added, internal quotation marks omitted) (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha*, 510 U.S. at 34).

restraint across the board—even to interlocutory appeals in civil cases,[45] to criminal cases within the federal system,[46] and *even*—as in the present case—to *interlocutory appeals in criminal cases*—articulating this principle in that last situation two years ago in *Trump v. United States*.[47]

And in fact, the Supreme Court has said that the need to adhere to the "final review, not first view" principle is *especially* important when the discretionary review court overturns a threshold ruling by a lower appellate court that prevented the latter court from reaching the merits of a claim: "In particular, when we reverse on a threshold question, we typically remand for resolution of any claims the lower courts' error prevented them from addressing."[48] And the Supreme Court found that to be true even in the interlocutory-appeal context, saying that, while the confidence of those who want an exhaustive review of the case is "inspiring, the Court adheres to time-tested practices instead—deciding what is required to dispose of this case and remanding after reversing on a threshold

---

[45] *Cutter*, 544 U.S. at 718 n.7.

[46] *Thompson v. United States*, 604 U.S. 408, 417-18 (2025).

[47] *Trump*, 603 U.S. at 617 ("Although we identify several considerations pertinent to classifying those allegations and determining whether they are subject to immunity, that analysis ultimately is best left to the lower courts to perform in the first instance.").

[48] *Zivotofsky*, 566 U.S. at 201.

question, to obtain guidance from the litigants and the court below."[49]

Preservation-of-error is a threshold issue.[50]  Under the Supreme Court's own reasoning, prudence dictates that, after reversing the preservation issue that the court of appeals used to block review of the merits, we should remand this case back to that court to do the merits review that it impermissibly evaded.

The Supreme Court's view meshes comfortably with this Court's own practice.  But we are not alone in Texas: our sister court, the Texas Supreme Court, also adheres to the "court of final review, not first view" doctrine:

> We *could* direct supplemental briefing on any other jurisdictional question and proceed to resolve that question ourselves in the first instance, but as a prudential matter, the law is typically better served when the lower courts review a legal issue before this Court does. "Ours is a court of final review and not first view.  Ordinarily, we do not decide in the first instance issues not decided below."[51]

The concurring and dissenting opinion suggests that skipping the court of appeals is justified if the issue is one to be reviewed *de novo* or in other instances when this Court is in as good a position as the court of appeals to review a matter. This seeming limitation to certain types of issues by the concurring and dissenting

---

[49] *Trump*, 603 U.S. at 641 (brackets, internal quotation marks, and citations omitted).

[50] *Cruz v. State*, 698 S.W.3d 265, 270 (Tex. Crim. App. 2024).

[51] *Rattray v. City of Brownsville*, 662 S.W.3d 860, 869-70 (Tex. 2023) (quoting *Zivotofsky*, 566 U.S. at 201) (emphasis in original).

opinion is no limitation at all. By expanding beyond *de novo* review issues to any issue that can be reviewed on a cold record, the concurring and dissenting opinion has swept in everything an appellate court would review. But even assuming the concurring and dissenting opinion has advocated a narrower scope of issues for review, such as those subject to a *de novo* standard, there are institutional reasons for having a court of appeals resolve the issue first. Both this Court and the parties can benefit from a "carefully wrought decision from the court of appeals."[52] Having that first reaction to an appellant's claims helps the parties refine their arguments and gives this Court a greater depth of argumentation to draw from, both from the parties and from the lower court's opinion itself. [53]

And while the concurring and dissenting opinion says that the issue has been

---

[52] *See Barber*, 2026 WL 1073627, *2 n.9 (quoting from *McClintock v. State*, 444 S.W.3d 15, 21 (Tex. Crim. App. 2014)); *State v. Arellano*, 600 S.W.3d 53, 61-62 (Tex. Crim. App. 2020).

[53] *See also Trump*, 603 U.S. at 641 (prudent to obtain "guidance from the litigants and the court below"); *Rattray*, 662 S.W.3d at 869 ("better served when the lower courts review a legal issue before this Court does"). And the implication that only *de novo* issues are involved in the present case is questionable at best. While a *de novo* review applies to whether a particular set of facts constitutes a consensual encounter, a court would need to give "almost total deference" to a trial court's findings of what the facts are. *State v. Castleberry*, 332 S.W.3d 460, 465-66 (Tex. Crim. App. 2011). On appeal, the State took issue with a historical fact finding made by the trial court: whether the officer "parked his patrol car behind [Appellee] in a way that made it impossible to leave." The State contended that such a finding was not supported by the record because it was contradicted by the video. "The deference we afford the trial court on historical facts encompasses electronic recordings, but there are times when electronic recordings establish facts conclusively, even under the deferential lens." *State v. Coleman*, — S.W.3d —, Nos. PD-0093-25 & PD-0094-25, 2026 WL 237733, *5 (Tex. Crim. App. January 29, 2026).

fully briefed before us, that is incorrect. Appellee has briefed the issue before us, but the *State* has *not*. It is true that the State briefed the issue before the court of appeals, but briefing before an intermediate appellate court is not an adequate substitute for briefing before us. For one thing, an intermediate appellate court considers its own prior decisions binding, but this Court is not bound by decisions of the courts of appeals. And being before the highest court might affect a party's calculus on how an issue is briefed. And Appellee has had *two* briefing opportunities—before the court of appeals and this Court—while the State has only had one, as it has understandably relied upon our jurisprudence regarding the role of this Court that the concurring and dissenting opinion disagrees with.

And it is not at all self-evident that the speedy disposition sought by the concurring and dissenting opinion would be better served by addressing the error issue in the first instance. Having found that the court of appeals made a basic error in how appeals are evaluated, our remand gives it the opportunity to address the State's error issue with dispatch, based on the briefing already before that court. Taking the issue upon ourselves would require us to at least offer the State the opportunity brief the issue before us. And depending on how we view the issue, we might be inclined to request oral argument—especially in light of the fact

that there is not a court-of-appeals opinion to inform our analysis. And this Court—with nine judges—is used to a deliberative process that could well take longer than it would take for a three-judge panel at the court of appeals to issue its decision. And once a court-of-appeals decision is issued, there is no guarantee that a party would even seek review, and if it did, we might refuse it. But if a party sought review and we granted it, we would at that point *have* a court-of-appeals opinion to help provide insight into the issue before us.

We are a discretionary review court. It is not our practice to conduct an "appeal de novo" and review appellate issues from scratch.[54] The State preserved and raised a single point of error before the court of appeals, and that error issue has not been addressed by the court of appeals. It is proper for that court to do so in the first instance.

### III. DISPOSITION

We reverse the judgment of the court of appeals and remand the case to that court to address the merits of the State's consensual-encounter claim.

Delivered: May 14, 2026

Publish

---

[54] *Barber*, 2026 WL 1073627, *2 n.9.